**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| METRO CARDIOVASCULAR CONSULTANTS, LTD., individually and as the representatives of a class of similarly situated persons and entities, | |
| Plaintiff, | Civil Action No. 1:19-cv-01508 |
| v. | |
| TINLEY PARK APOTHECARY, LLC, dba TPA PHARMACY TINELY PARK, IL | **JURY DEMANDED** |
| Defendant. | |

## CLASS ACTION COMPLAINT

NOW COME the Plaintiff, METRO CARDIOVASCULAR CONSULTANTS, LTD. ("Plaintiff"), by through its attorney, James C. Vlahakis, and brings this putative class action against Defendant, TINLEY PARK APOTHECARY, LLC, dba TPA PHARMACY TINELY PARK, IL ("Defendant"):

## I.    INTRODUCTION

1.      The Telephone Consumer Protection Act of 1991, 47 USC §227, et seq. (at times the "TCPA"), as amended by the Junk Fax Prevention Act of 2005 (at times the "JFPA" or the "Act"), makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement."  47 U.S.C. §227(b)(1)(C).

2.      The JFPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  47 U.S.C. §227(a)(5).

3.  On **January 12, 2019**, Defendant sent or transmitted an unsolicited facsimile advertisement (the "Subject Facsimile") to Plaintiff's facsimile based telephone number, (708)229-0300 (the "Facsimile Number").

4.  A true and accurate copy of the Subject Facsimile is depicted below:



5. As evidenced by the above image, the Subject Facsimile asked Plaintiff to "refer uninsured patients to our mail order in house discount program" and promoted the commercial availability and pricing for dozens of "generic" medications.

6. Defendant transmitted the Subject Facsimile to the Facsimile Number without Plaintiff's "prior express invitation or permission."

7. Defendant's transmission of the Subject Facsimile is representative of its conduct towards other Illinois based recipients of identical or similar unsolicited facsimiles.

8. Accordingly, on behalf of itself and all others similarly situated, Plaintiff bring this civil action to certify a class of persons and entities were set facsimile advertisements without their prior express invitation or permission.

## II.    PARTIES, JURISDICTION AND VENUE

9. Plaintiff is an Illinois corporation, located in Oak Law, Illinois.

10. The Facsimile Number is a facsimile based telephone number.

11. The Facsimile Machine is located within this District.

12. Plaintiff uses the Facsimile Number to send and receive facsimile transmissions.

13. The Facsimile Number is connected to device which utilizes hardware and software to allow the device to receive, store and print inbound facsimiles (the "Facsimile Machine").

14. This Court has subject matter jurisdiction under 28 U.S.C. §1331 and 47 U.S.C. § 227.

15. At all times relevant to the allegations set forth in this Civil Action, as reflected by the below screen capture of Defendant's listing on the Illinois Secretary of State's website, Defendant is a domestic (Illinois) based corporation, with a principal

office located at 17320 Oak Park Ave, Tinley Park, IL, 60477.  Defendant's registered

agent is Omar T. Hassal, 8503 Managhan Drive, Tinley Park, IL, 60487:



16.     Defendant maintains a physical storefront in Tinley Park, Illinois and

operates a webpage which advertises its storefront services:



17.     This court has personal jurisdiction over Defendant because it has transacted business within this judicial district as a pharmacy.  Defendant has also committed tortious acts within this judicial district by and through the transmission of the Subject Facsimile, and on information and belief, other similar unsolicited advertising facsimiles to this judicial district.

18.     Venue is proper because the Subject Facsimiles was sent to and received within this judicial district.

19.     Supplemental jurisdiction exists for Plaintiff's state law claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*

### III.     <u>SUMMARY OF THE JFPA/TCPA</u>

20.     Congress enacted the TCPA to combat unsolicited facsimile transmissions:

> Congress also took account of the "interference, interruptions, and expense" resulting from junk faxes, emphasizing in the same Report that "[i]n addition to the costs associated with the fax advertisements, when a facsimile machine is receiving a fax, it may require several minutes or more to process and print the advertisement. During that time, the fax machine is unable to process actual business communications."

*See,* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 18 FCC Rcd 14014, 14131-32 (2003) (the "2003 TCPA Report and Order") at para. 201 (quoting H.R. REP. NO. 102-317 at 25 (1991)).

21.     The The 2003 TCPA Report and Order can be found at the following web address:  https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

22.     Unsolicited facsimiles prevent telefax machines from receiving authorized facsimiles, prevent their use for authorized outgoing facsimiles, cause undue wear and tear on the recipients' telefax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited advertising message.

23.     The TCPA prohibits the transmission of unsolicited to more than just facsimiles "conventional stand-alone telephone facsimile machine."

24.     According to the FCC's 2003 TCPA Report and Order:

> We conclude that faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes . . . . The record confirms that a conventional stand-alone telephone facsimile machine is just one device used for this purpose; that developing technologies permit one to send and receive facsimile messages in a myriad of ways. Today, a modem attached to a personal computer allows one to transmit and receive electronic documents as faxes. "Fax servers" enable multiple desktops to send and receive faxes from the same or shared telephony lines.

> The TCPA's definition of "telephone facsimile machine" broadly applies to any equipment that has the capacity to send or receive text or images. The purpose of the requirement that a "telephone facsimile machine" have the "capacity to transcribe text or images" is to ensure that the prohibition on unsolicited faxing not be circumvented. Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines.

*See*, FCC's 2003 TCPA Report and Order at paras. 200, 201.

25.     Pursuant to the TCPA, the person or entity transmitting an advertising facsimile bears the burden of proof as to whether it had the permission of the recipient to transmit the facsimile.  47 U.S.C. §227(b)(1)(C).

26.     One way a transmitting party can demonstrate permission is through the demonstrating and established business relationship (an "EBR") with the receiving party.

27.     The FCC has explained why the burden on establishing and EBR on the person or entity transmitting the facsimile:

> 12.  To ensure that the EBR exemption is not exploited, we conclude that an entity that sends a facsimile advertisement on the basis of an EBR should be responsible for demonstrating the existence of the EBR. The entity sending the fax is in the best position to have records kept in the usual course of business showing an EBR, such

as purchase agreements, sales slips, applications and inquiry records. We emphasize that we are not requiring any specific records be kept by facsimile senders. Should a question arise, however, as to the validity of an EBR, the burden will be on the sender to show that it has a valid EBR with the recipient.

\* \* \*

14. In the event a recipient complains that its facsimile number was not provided to the sender, the burden rests with the sender to demonstrate that the number was communicated in the context of the EBR.

15. . . . We also reiterate that senders of facsimile advertisements must have an EBR with the recipient in order to send the advertisement to the recipient's facsimile number. The fact that the facsimile number was made available in a directory, advertisement or website does not alone entitle a person to send a facsimile advertisement to that number.

*See,* Report and Order and Third Order on Reconsideration (the "2006 FCC Order"). *See,*

https://apps.fcc.gov/edocs_public/attachmatch/FCC-06-42A1.pdf

28.     The JFPA prohibits the transmission of unsolicited advertising facsimiles to traditional, stand-alone facsimiles machines as well as computerized facsimile delivery systems.

29.     The JFPA authorizes a plaintiff to receive a minimum of statutory damages of $500 for each unlawful facsimile and authorizes up to $1,500 in statutory damages where person or entity is found to have willingly or knowingly committed a violation of the JFPA.

## IV.     DEFENDANT VIOLATED THE JFPA/TCPA

30.     The Subject Facsimile promoted the commercial availability, quantity and pricing for various prescription medications.

31.     Plaintiff did not provide prior express invitation or permission to allow Defendant to send the Subject Facsimile.

32.     To the best of Plaintiff's knowledge information and belief, Defendant did not have a prior established business relationship with Plaintiff.

33.     Defendant transmitted caused the Subject Facsimile to the Facsimile Number.

34.     Alternatively, Defendant caused the Subject Facsimile to be transmitted to the Facsimile Number.

35.     Alternatively, one of Defendant's authorized agents caused the Subject Facsimile to be transmitted to the Facsimile Number.

36.     The transmission and receipt of the Subject Facsimile to Plaintiff's Facsimile Number caused Plaintiff to suffer concrete and actual harm.

37.     Plaintiff, as recipients of the Subject Facsimile, temporarily lost the use of it telefax machine, paper, and ink toner for a period of time.

38.     Receiving, viewing and printing the Subject Facsimile wasted the Plaintiff's valuable time and the time of one of its employees.

39.     The time wasted review the Subject Facsimile could have been spent on something else.

40.     Contacting the sender of an unsolicited facsimile for the purpose of telling the sending party to stop sending unsolicited facsimiles wastes the time of the recipient.

41.     The Subject Facsimile interrupted and disturbed Plaintiff's right of privacy and right to not be disturbed with unsolicited advertising facsimiles.

42.     The transmission of the Subject Facsimile to Plaintiff's Facsimile Number tied up Plaintiff's Facsimile Number, caused Plaintiff's to use data, resulted in the unnecessary use of computer storage space and unauthorized usage of their facsimile machine's software and hardware.

## V.     ADDITIONAL CLASS BASED ALLEGATIONS

43.     More than forty (40) Illinois companies or persons in the State of Illinois received similar to the Subject Facsimile without their consent and were harmed in a similar manner as alleged above by Plaintiff.

44.     Upon information and belief, because unsolicited facsimiles are generally sent out *en mass*, it is plausible to allege that Defendant has sent, and continues to send, dozens, and up to hundreds of similar unsolicited advertisements via facsimile transmission in violation of the JFPA.

45.     In 2019, Defendant transmitted or caused to be transmitted Facsimile Advertisements to more than forty (40) telephone numbers with Illinois-based area codes in the absence of permission or an EBR.

46.     In 2018, Defendant transmitted or caused to be transmitted Facsimile Advertisements to more than forty (40) telephone numbers with Illinois-based area codes in the absence of permission or an EBR.

47.     In 2017, Defendant transmitted or caused to be transmitted Facsimile Advertisements to more than forty (40) telephone numbers with Illinois-based area codes in the absence of permission or an EBR.

48.     In 2016, Defendant transmitted or caused to be transmitted Facsimile Advertisements to more than forty (40) telephone numbers with Illinois-based area codes in the absence of permission or an EBR.

49.     In 2016, Defendant transmitted or caused to be transmitted Facsimile Advertisements to more than forty (40) telephone numbers with Illinois-based area codes in the absence of permission or an EBR.

**COUNT I**

**UNSOLICITED FACSIMILES IN VIOLATION OF THE JFPA/TCPA**

50.     Plaintiff incorporate the above paragraphs as if fully set forth.

51.     The Subject Facsimile was as advertisement as contemplated by the JFPA.

52.     As set forth above, Defendant violated the JFPA and the regulations promulgated thereunder by sending the Subject Facsimile to Plaintiff and more than forty (40) putative class members.

53.     The JFPA provides a private right of action to bring this action on behalf of Plaintiff and the putative class members to redress Defendant's violations of the Act and provides for statutory damages. 47 U.S.C. §227(b)(3).

54.     Plaintiff intends to certify a class which includes the Subject Facsimile and all other similar unsolicited advertising facsimiles sent during the four years prior to the filing of this civil action through the present.

55.     The unlawful transmission of the Subject Facsimile to Plaintiff and other similar unsolicited advertising facsimiles putative class members caused Plaintiff and the putative class members to suffer damages.

56.     The unlawful transmission of the Subject Facsimile to Plaintiff and the unlawful transmission other similar unsolicited facsimiles to class members caused Plaintiff and the recipients to use and waste paper and toner when they printed the subject facsimiles.

57.     The unlawful transmission of the Subject Facsimile to Plaintiff and the unlawful transmission other similar unsolicited facsimiles to class members occupied and/or depleted their telephone lines, data lines, computer storage related to the operation of their facsimile machines.

58.     The unlawful transmission of the Subject Facsimile to Plaintiff and the unlawful transmission other similar unsolicited facsimiles to class members caused Plaintiff and the class members and/or their employees to waste time receiving, reviewing and routing the unsolicited and unlawful facsimiles.

59.     This wasted time could have been spent on the Plaintiff's and the other class members' business activities.

60.     Just like with Plaintiff, Defendant cannot demonstrate that it had the consent of the recipients of each facsimile advertisement.

61.     The unlawful transmission of the Subject Facsimile to Plaintiff and the unlawful transmission other similar unsolicited facsimiles to class members interrupted the Plaintiff's and other class members' privacy interests in being left alone and free from unsolicited "junk" facsimiles.

62.     In accordance with FRCP 23(b)(1), (b)(2) and (b)(3), Plaintiff brings Count I of this class action pursuant to the JFPA, on behalf of the following class of persons:

> All persons in the United States who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendant, (3) from whom Defendant did not obtain "prior express invitation or permission" to send fax advertisements, or (4) with whom Defendant did not have an established business relationship.

63.     Plaintiff intends the above class to include everyone in the United States who received the identical or similar facsimile as the Subject Facsimile.

64.     Plaintiff also intends the above class to include everyone who received similar variations unsolicited facsimile advertisement

65.     Alternatively, Plaintiff bring this class action pursuant to the JFPA, on behalf of the following class of persons:

> All persons located in the State of Illinois who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendant, (3) from whom Defendant did not obtain "prior express invitation or permission" to send fax advertisements, or (4) with whom Defendant did not have an established business relationship.

66. Plaintiff reserve the right to amend these class definitions upon completion of class certification discovery.

Class Size - FRCP 23(a)(1)

67. Upon such information and belief, the number of persons and entities of the Class is numerous and joinder of all members is impracticable.

68. Upon such information and belief, there are at least 40 class members.

Commonality - FRCP 23 (a) (2)

69. Common questions of law and fact apply to the claims of all class members.

70. Common material questions of fact and law include, but are not limited to, the following:

a. Whether Defendant sent unsolicited fax advertisements;

b. Whether the facsimiles advertised the commercial availability or quality of property, goods, or services;

c. The manner and method Defendant used to compile or obtain the list of fax numbers to which they sent Exhibit A, other unsolicited faxed advertisements or other advertisements:

d. Whether Defendant faxed advertisements without first obtaining the recipient's prior invitation or permission;

e. Whether Defendant sent the faxed advertisements knowingly;

f. Whether Defendant violated the provisions of 47 U.S.C. §227 and the regulations promulgated thereunder;

g. Whether Defendant should be enjoined from faxing

advertisements in the future;

h. Whether Plaintiff and the other members of the class are entitled to statutory damages; and

i. Whether the Court should award treble damages.

Typicality - FRCP 23 (a) (3)

71. Plaintiff's claims are typical of the claims of all class members.

72. Plaintiff received the same or similar facsimiles as the facsimiles sent by or on behalf of Defendant advertising products, goods and services of Defendant during the Class Period.

73. Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute. Defendant has acted in the same or in a similar manner with respect to Plaintiff and all the class members by sending Plaintiff and each member of the class the same or similar facsimiles or facsimiles, which were sent without prior express invitation or permission.

Fair and Adequate Representation - FRCP 23(a)(4)

74. Plaintiff will fairly and adequately represent and protect the interests of the class.

75. Plaintiff is interested in this civil action, have no conflicts, and have retained experienced class counsel to represent the class.

76. Plaintiff's counsel, James C. Vlahakis, is an experienced consumer class action litigator.  For example, Mr. Vlahakis has:

a. defended and/or prosecuted over a hundred consumer-based claims since 1998;

b. has obtained approval of multi-million-dollar TCPA based class action settlements in conjunction with class counsel (*see, e.g.,In Re Capital One Telephone Consumer Protection Act Litigation,* 2012-cv-10064 (N.D. Ill.) ($75 million dollar TCPA based automated dialing system settlement); *Prater v. Medicredit, Inc.,*

2014-cv-0159 ($6.3 million dollar TCPA based automated dialing system wrong party settlement); *INSPE Associates v. CSL BIotherapries, Inc.* (N.D. Ill.) ($3.5 million fax based settlement);

c. gained court approval in relation to approximately a dozen FDCPA based class action settlements;

d. has defeated a TCPA class certification in *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013);

e. has successfully moved to decertify a TCPA based class action in *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012);

f. has also obtained favorable declaratory relief before the Federal Communication Commission ("FCC") relative to a TCPA junk facsimile-based cause of action (*see* FCC's Order of October 30, 2014, FCC14-164, in CG Docket Nos. 02-278 and 05-338); and

g. on May 5, 2015, Mr. Vlahakis was appointed to serve as a Steering Committee Member in the case of *In re: Apple Inc. Device Performance Litigation*, 18-MD-02827 (N.D. Cal.).

Need for Consistent Standards and Practical Effect of Adjudication (FRCP 23(b)(1)

77. Class certification is appropriate because the prosecution of individual actions by class members would: (a) create the risk of inconsistent adjudications that could establish incompatible standards of conduct for Defendant, and/or (b) as a practical matter, adjudication of the Plaintiff's claims will be dispositive of the interests of class members who are not parties.

Common Conduct - FRCP 23(b)(2)

78. Class certification is also appropriate because Defendant has acted in the same or similar manner with respect to all class members thereby making injunctive and declaratory relief appropriate. Plaintiff demands such relief as authorized by 47 U.S.C. § 227.

Predominance and Superiority - FRCP 23(b)(3)

79.     Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

  a.  The evidence of the absence of consent relative to putative class members will result in the fair and efficient adjudication of class members' claims without the need for separate or individualized proceedings;

  b.  Evidence regarding defenses or any exceptions to liability that Defendant may assert and attempt to prove will come from business records and will not require individualized or separate inquiries or proceedings;

  c.  Defendant has/have acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

  d.  The amount likely to be recovered by individual class members does not support individual litigation;

  e.  A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

  f.  This case is inherently manageable as a class action in that:

    (i)     Defendant targeted persons to receive the fax transmissions and it is believed that Defendant purchased a list of advertising leads from a third-party;

    (ii)    business records from Defendant will readily identify class members and establish liability and damages;

    (iii)   business records from one or more third-parties will readily identify class members and establish liability and damages;

    (ii)    Liability and damages can be established for the Plaintiff and the class with the same common proofs;

    (iii)   Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

    (iv)    A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

(v)     A class action will contribute to uniformity of decisions concerning the actions taken by Defendant; and

(vi)    As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendant as follows:

a.  That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint one or both of the Plaintiff as the representative of the class, and appoint its counsel as counsel for the class;

b.  That the Court award actual monetary loss from the above violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater;

c.  That the Court award treble damages of $1,500.00 if the violations are deemed "willful or knowing";

d.  That Court enjoin Defendant from additional violations of the TCPA; and;

e.  That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

## COUNT II

## <u>VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT</u>

80.     Plaintiff incorporates the above paragraphs as if fully set forth in this Count.

81.     As alleged above, Defendant is engaged in commerce in the State of Illinois with regard to Plaintiff.

82.     Defendant violated Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq.*, by transmitting the Subject Facsimile to Plaintiff and other Class Members.

83.     The Facsimiles are "advertisement[s]" as the term is defined by Section 505/1(a) of the ICFA.

84.     Plaintiff is a "person" as this term is defined by Section 505/1(c) of the ICFA.

85.     Defendant treated Plaintiff as a "consumer" as this term is defined by Section 505/1(e) of the ICFA because Defendant sought to solicit payment from Plaintiff for what was being advertised on the Subject Facsimile.

86.     The Subject Facsimile was an "advertisement" as this term is defined by Section 505/1(a) of the ICFA.

87.     According to Section 505/1(a) of the ICFA:

> The term "advertisement" includes the attempt by publication, dissemination, solicitation or circulation to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise and includes every work device to disguise any form of business solicitation by using such terms as "renewal", "invoice", "bill", "statement", or "reminder", to create an impression of existing obligation when there is none, or other language to mislead any person in relation to any sought after commercial transaction.

88.     The Subject Facsimile was a form of a "sale" as this term is defined by Section 505/1(d) of the ICFA.

89.     According to Section 505/1(d) of the ICFA, "[t]he term "sale" includes any sale, offer for sale, or attempt to sell any merchandise for cash or on credit."

90.     The Subject Facsimile was a form of "trade" and/or "commerce" as these terms are defined by Section 505/1(f) of the ICFA.

91.     According to Section 505/1(f) of the ICFA:

> The terms "trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State.

92.     The ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices."

93.     In relevant part, Section 5050/2 states as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" . . . in the conduct of any trade or commerce. . . .

94.     As alleged above and detailed below, Defendant violated Section 505/10a(a) of the IFCA.

95.     Plaintiff did not consent to receiving the Subject Facsimile.

96.     Plaintiff suffered tangible damages as a result of receiving the Subject Facsimile in the form of wasted toner and paper, wear and tear of the subject facsimile machine, and time wasted in terms of having to look at, print and dismiss the Subject Facsimile for what it is – unsolicited junk.

97.     On a motion to dismiss, a court should not presume that this injury is so minor that the maxim *de minimis non curat lex applies.*

98.     Characterizing the harm as *de minimis* at the pleading stage would conflict with the ICFA's remedial purpose, because it would allow Defendant to freely engage in unfair practices so long as the effects were spread thinly over a large population of victims. *See, e.g., Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 41-42, n. 9 (1st Cir. 2003) (noting that consumer suits are especially well-suited for class treatment, because the vindication of consumer rights regularly involves class actions on behalf of members "whose individual claims would be too small to warrant litigation").

99.     Defendant intentionally transmitted the Subject Facsimile, which constitutes an unfair or deceptive act or practice "in the course of conduct involving trade or commerce".

100.    Transmitting unsolicited facsimiles offends public policy.  Not only is the transmission of unsolicited facsimiles unlawful under the TCPA, it is a misdemeanor criminal offense under Illinois law.  *See* 720 ILCS 5/26-3.

101.    Transmitting unsolicited facsimiles is oppressive because unsolicited facsimiles impose a lack of meaningful choice and/or an unreasonable burden upon recipients.

102.    A practice of sending unsolicited faxes does deprive consumers of choice, given that they cannot avoid such faxes without turning off their fax machines.

103.    Costs that are imposed on an unwilling consumer can constitute a substantial injury.

104.    As alleged above, unsolicited faxes impose costs on unwilling consumers, by wasting paper and toner, wearing down fax machines, and consuming employee time.

105.    On information and belief, Defendant has transmitted at least three dozen similar unsolicited facsimiles to people and/or business entities in Illinois.

106.    Defendant's practice of sending unsolicited facsimiles has violated Illinois public policy, deprived persons and businesses of the choice to not receive advertising faxes, and caused a significant amount of harm to consumers, taken in the aggregate.

107.    Accordingly, the Complaint plausibly suggests that the aggregate harm caused by this practice would constitute substantial harm and thus unfair within the meaning of the ICFA.

108.    In relation to Count II, Plaintiff intends to certify a class of:

> (a) all Illinois residents; (b) who received advertising facsimiles from Defendant in the past three years; (c) where Defendant did not have consent to transmit the facsimiles to the recipients; and/or Defendant cannot demonstrate that it had an established business relationship with the recipients before transmitting the facsimiles to the recipients.

109.    Excluded from the Class are Defendant, its predecessors, affiliates, and officers, employees, contractors and agents, this Honorable Court and its staff members.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendant, as follows:

a. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint one or both of the Plaintiff as the representative of the class, and appoint its counsel as counsel for the class;

b. That the Court award actual monetary loss from the above violations;

c. That the Court award punitive damages;

d. That the Court award statutory attorney's fees and costs pursuant to ILCS 505/10a(c);

e. That Court enjoin Defendant from additional violations of the ICFA and;

f. That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

**Plaintiff hereby demands a jury trial.**

Respectfully submitted,

Plaintiff METRO CARDIOVASCULAR CONSULTANTS, LTD., individually, and as the representatives of a class of similarly situated persons

/s/ James C. Vlahakis

James C. Vlahakis
Sulaiman Law Group, Ltd
2500 South Highland Avenue #200
Lombard, IL 60148
Phone: (630) 581-5456
jvlahakis@sulaimanlaw.com

## **Certificate of Service/Proof of Service**

I, James C. Vlahakis, counsel for Plaintiff, certify that I, or a staff member under my supervision, caused the above document to be filed on the date indicated by the District Court's ECF filing system.

Dated: 3/1/2019

*/s/ James C. Vlahakis*

James C. Vlahakis
Sulaiman Law Group, Ltd
2500 South Highland Avenue #200
Lombard, IL 60148
Phone: (630) 581-5456
jvlahakis@sulaimanlaw.com